UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 11-CIV-22517-MOORE/TORRES

**Raiko Diaz**; and others similarly situated,	CLASS REPRESENTATION

      Plaintiffs,

v.

**Southern Automotive Group, Inc.** d/b/a
"Kendall Kia"; **Southern Automotive Dealer
Group, Corp.** d/b/a "Homestead Chevrolet Cadillac"
and **Rod R. Rifai**, individually,

      Defendants.
_____/

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM FOR
CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION UNDER THE FLSA,
PRODUCTION BY DEFENDANT OF A COMPREHENSIVE LIST OF PRESENT AND
FORMER EMPLOYEES, AND COURT AUTHORIZED MAILING OF OPT-IN
NOTICES, WITH PROPOSED NOTICE AND OPT-IN FORMS**

Plaintiff Raiko Diaz, individually and on behalf of similarly situated employees, hereby moves the Court for an Order:

(1) granting conditional certification of the above styled action as a collective action under the Fair Labor Standards Act (with the proposed class defined herein);

(2) expediting discovery production by the Defendant, within 15 days of the Court Order, of a complete list of each and every person -- and their last known home address and telephone number, email addresses and social security numbers -- who was ever employed as an automobile salesperson at either of the privately held automobile dealerships operated by Defendant Rod Rifai under the fictitious names "Kendall Kia" and "Homestead Chevrolet-Cadillac" at any time between July 13, 2008 and the present ("the Proposed Class");

(3) requiring the Defendants to format and produce on an expedited basis a list, both in hard copy and electronically in an Excel spreadsheet, of each such person listed alphabetically from "A" to "Z" and with each person's last known home address and telephone number, email addresses and social security numbers in a separate field corresponding with each name;

(4) permitting Plaintiff's counsel to mail a Court-Approved Notice to all such persons about their rights to opt into this collective action by filing a Consent to Join Lawsuit (in the proposed forms attached hereto and incorporated herein by reference as Exhibits "1" and "2"); and

(5) tolling the applicable statute of limitations from the date the complaint was filed until the "opt-in" deadline established by the Court.

## I. INTRODUCTION, FACTS AND CORE ARGUMENT

### A. PROCEDURAL POSTURE OF THIS CASE.

On July 13, 2011 Plaintiff filed this cause as a collective action under the FLSA and simultaneously filed his "Consent to Join" as specifically required by 29 U.S.C. §§216(b) and 256(a). D.E. 1 and D.E. 7-1. He seeks damages individually and on behalf of other similarly situated employees based upon the Defendants' failure to comply with the minimum wage requirements of the statute. The lawsuit is filed against an individual named Rod Rifai and two automobile dealerships located on south Miami-Dade County owned, operated, and controlled by him and which he operates under the fictitious names of "Kendall Kia" and "Homestead Chevrolet-Cadillac". Both fictitious names are owned by respective corporations also owned and controlled by Mr. Rifai.

Answers to the Complaint were filed on August 23, 2011

The named Plaintiff formerly worked at the "Kendall Kia" dealership located in Kendall, Florida. However, prior to commencing employment at the Kendall Kia dealership, he was required to pay for and complete a training course given at the "Homestead Chevrolet-Cadillac" dealership. Plaintiff maintains that for purposes of conditional certification, the automobile salespersons employed at both of the related "dealerships" should receive notice and an opportunity to participate in this action. The FLSA defines "Employer" broadly to include: "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d). Former sales persons who worked at both dealerships have filed Consents to Join this lawsuit pursuant to 29 U.S.C. §216(b) and likewise seek recovery of unpaid minimum wages and liquidated damages under the FLSA.

Since the filing of the lawsuit by the named individual Plaintiff (Mr. Raiko Diaz), a total five (5) similarly situated salesmen from both of the "Kendall Kia" and "Homestead Chevrolet-Cadillac" dealerships have indicated their intent to join by filing "Consents to Join" pursuant to 29 U.S.C. §216(b) or by otherwise indicating their similar experiences regarding the unlawful pay practices of the Defendants. (D.E. 7, 30, 19, 20, 21, 23, 24-3). Plaintiff seeks conditional certification, expedited discovery and an extension or tolling of the statutory limitations period so that Opt-in Plaintiffs who join or have joined subsequent to the filing of the initial complaint -- or alternatively the filing of this motion -- might receive the benefit of the respective original filing dates for purposes of the applicable statute of limitations. 29 U.S.C. §§255 and 256.

**B.  THE FACTS SET FORTH IN THE PLAINTIFFS' AFFIDAVITS SUPPORT CONDITIONAL CERTIFICATION.**

In the instant collective action under the FLSA, there are ample grounds to conclude that other similarly situated employees willing to join this lawsuit exist and that a collective action

should be conditionally certified so that all putative class members may receive notice and an opportunity to join in this action. As a preliminary matter, as previously mentioned, five (5) former employees from both the "Kendall Kia" and "Homestead Chevrolet-Cadillac" dealerships have already indicated their consent to join this lawsuit as opt-in Plaintiffs.

The credible and well founded allegations of the Complaint are based upon the existence of an unlawful pay practice utilized by this Employer at both of the related dealerships at which the various class members work or worked. Those allegations are corroborated by the verified allegations set forth in respective affidavits of various former employees participating in this lawsuit. See D.E.s 20, 21, 23, and 30. The "Kendall Kia" and "Homestead Chevrolet-Cadillac" dealerships are closely, privately, owned, operated and controlled by Defendant Mr. Rod Rifai, individually. In fact, Mr. Rifai is listed as the registered agent for both dealerships at each of the dealerships' respective locations. He is also the sole Officer and director of each dealership.

As set forth in the respective affidavits of former sales employees, the Plaintiffs and putative class members are or were employed at one or both of the dealerships owned and operated by Defendant Rod Rifai in south Miami-Dade County, Florida during all or portions of the three year period preceding the filing of this lawsuit. For the entire period of time they were employed by this Employer, the Plaintiffs worked as automobile salespersons under a "commissions-only" pay plan. Under this plan, they and the other automobile salespersons who makeup the putative class worked under a pay plan which ensured that they received only the commissions they generated over the long term, regardless of how many hours they might work during respective pay periods. They all received a gross bi-weekly "draw" of either $600.00 or $800.00, from which applicable tax withholdings were made, regardless of how many hours they actually worked. The bi-weekly "salary" or "draw" was completely unrelated to the hours they

worked. *Id*. In fact, the Defendants pay a flat draw in spite of the fact that they have a time keeping mechanism available for the collection of data pertaining to the hours worked by their hourly sales staff. However, the timekeeping practices of the Employer are designed to purposefully understate the number of hours actually worked by hourly sales staff, even though such data is not used to determine the amount of compensation they receive. The under-recording of hours worked is accomplished in at least two ways: the automatic entry of zero hours worked whenever a single punch in or out is omitted, and by the automatic punch-out of salesmen at a fixed time. See D.E. 30-1 at ¶5 and composite D.E. 30-2.

The Plaintiffs were typically scheduled to work between six days and seven days per week and actually worked at least 10 to 12 hours per day. In spite of the many hours worked, they received no compensation on account of those hours. On a roughly monthly basis the employer would also calculate the amount of commissions generated by each salesperson and disburse only those commissions earned in excess of the gross salary or draw already disbursed. *Id*. If the salary disbursed exceeded the commissions generated, as was frequently the case, no additional compensation was made to salespersons; on the contrary, to the extent that the salary paid on a bi-weekly basis exceeded the commissions calculated on a monthly basis, those ***negative balances were carried over and paid back to the employer from earned commissions during subsequent pay periods and treated as** a debt owed by the employees to the employer*. *Id*. Thus, although their bi-weekly "draw" included tax withholdings, those payments were not "free and clear" in that the Plaintiffs were not permitted to keep their "wages" unconditionally as specifically required by regulations governing application of the FLSA. 29 CFR §531.35.

Each of the Plaintiffs, on numerous occasions generated fewer commissions than were necessary to cover even the below minimum wage rate of compensation received on a bi-weekly

5

basis and certainly below the amounts necessary to compensate them for every hour actually worked during applicable pay periods. Accordingly, during each of these respective pay periods, the Employer failed to pay the Plaintiffs the minimum hourly wage required by law.

The Employer further exacerbated the problem during these difficult economic times by actually deducting from the respective commissions earned, unauthorized charges and penalties which further reduced the amount of net compensation to employees further below the minimum wage rate for respective pay periods in such a manner, that occasionally the sales persons would end an applicable pay period actually owing money to the Employer in spite of having worked full time during an applicable pay period. Such deductions included automated payroll withholdings for "coffee" and undescribed "receivables".

Under the circumstances of this case, the Court should accept the Plaintiffs' attestations and other evidence summarized above as sufficient for conditional certification at this stage, particularly in light of the modest preliminary showing required for conditional class certification.

C. **CORE LEGAL ARGUMENTS AND POLICY CONSIDERATIONS SUPPORTING CONDITIONAL CLASS CERTIFICATION.**

The FLSA was enacted in 1938 to ensure that every employee receives "a fair day's pay for a fair day's work." *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945)(quoting address to Congress by Franklyn D. Roosevelt in 1937). In light of the FLSA's broad remedial purposes, it is well settled that the FLSA is to be liberally construed to apply to the furthest reaches consistent with congressional intent. *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993). The FLSA requires employees be paid at least a minimum wage for every hour they work during *each* applicable pay period. 29 U.S.C. §206 and §215(2). Liability is accrued per pay period.

6

In enacting the FLSA, Congress recognized that, given the relatively small amounts of money at issue in each individual case, it would be difficult to encourage employees and attorneys to pursue the FLSA's important policies.  In response to this problem, Congress included certain provisions in the FLSA to encourage employees and attorneys to pursue litigation on behalf of all affected employees.  The central provision, 29 USC § 216(b), expressly allows an action to be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  This mechanism in FLSA litigation is known as the "collective action."

Like a class under Rule 23, 29 USC §216(b) allows numerous persons to proceed in a single lawsuit.  However, most of the similarities between the two types of actions end there.  Most importantly for the instant motion, the standard for certifying a collective action under the FLSA is different from – and considerably more lenient and flexible than – the standard for certifying a class under Rule 23.  A plaintiff seeking conditional certification of a collective action under 29 USC §216(b) need only make a modest showing that he and the putative plaintiffs may be "similarly situated."  The phrase "similarly situated" is interpreted broadly to include all potentially affected employees who may have an interest in the suit.  It is well settled that this determination is made using a fairly lenient standard and typically results in conditional certification of a class.  *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F3d 1208, 1219 (11th Cir. 2001).

Notice to similarly situated persons is critical in this case, because the statute of limitations for damages under the FLSA generally continues to run until putative class members actually "opt in" by filing Consents to Join with the Clerk of the Court.  Unlike Rule 23, which requires individuals to opt out if they want to be excluded from a class action, §216(b) requires them to opt in if they are to participate in the action.  Under the FLSA, each pay period has its

own statute of limitations. Hence every day that passes without other employees' receiving notice of this suit by the representative plaintiff tolls the statute of limitations for all others. It is also very important to note that Plaintiff is not requesting a final determination of whether he and other potential opt-in plaintiffs are "similarly situated." Only conditional certification is sought now. As the Eleventh Circuit Court of Appeals has observed, conditional certification is lenient. Defendant can later move for decertification once discovery is complete.

The Eleventh Circuit has joined the Fifth and Ninth Circuits in recommending that courts utilize a two-tiered approach to certification of an opt-in class under §216(b). *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F3d 1208, 1219 (11th Cir. 2001)(stating that the two tiered approach "appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that the district courts in this circuit adopt it in future case"). Under the two-tiered approach, the Court makes an initial determination -- based solely upon the pleadings and any affidavits -- whether the notice of the action should be given to potential class members. *Id*. at 1218. Because the Court has minimal evidence at this stage of the proceedings, this determination is made using a fairly lenient standard, and typically results in conditional certification. *Id*. Thereafter, a second, more rigorous factual determination is made as to whether opt-in plaintiff's are actually "similarly situated". *Id*.

## II.   AUTHORITY AND ARGUMENT

### A.   GRANTING PLAINTIFFS' MOTION WOULD FURTHER THE LEGISLATIVE POLICY OF PROTECTING EMPLOYEES' RIGHTS TO RECEIVE A MINIMUM WAGE.

The Court has discretion to permit notice of this action to all potential plaintiffs. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "Section §216(b) of the FLSA allows plaintiff to sue on behalf of 'other employees similarly situated,' in an action to recover

unpaid overtime wages…" *O'Brien v. Morse*, 2002 U.S. Dist. Lexis 10495, *2 (N.D. Ill. 2002)(quoting 29 U.S.C. §216(b)). This type of action is routinely referred to as a "collective action." See generally *Sperling*, 493 U.S. at 170.[1] A district court has considerable discretion in determining whether to certify a collective action. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F3d 1208, 1219 (11th Cir. 2001).

Collective actions under the FLSA benefit the employee, the employer, and the court system because they are preferable to multiple independent lawsuits by employees who opt in. *See Culver v. Bell & Loffland, Inc.*, 146 F2d 29 (9th Cir. 1944); *Shain v. Armour & Co.*, 40 F. Supp 488 (D.C. Ky. 1941); *Fowkes v. Dravo Corp.*, 62 F. Supp. 361 (D.C. Pa. 1945). But for the collective action provisions of the FLSA, multiple lawsuits against the Defendant may exist, rather than one collective action.

Notice to potential plaintiffs also honors the legislative intent underlying §216(b). The FLSA was enacted to protect employees, and it provides for collective actions to enforce their legal rights under its provisions. In one court's words, the FLSA's collective action provision "would have little or no significance if notice were not permitted in some form." *Pirrone v. North Hotel Associates*, 108 F.R.D. 78 (E.D. Pa. 1985). The same court elaborated that notice to potential plaintiffs is appropriate because of the FLSA's broad remedial purposes, its explicit provision for representative actions, the practical realities of management of class actions, and the courts' interests in avoiding a multiplicity of suits. *Id*. at 11-12.

A collective action may be certified as long as some questions of law or fact are common

---

[1] / In *Hoffman-LaRoche,* the Supreme Court examined the propriety of court supervised notice under §216(b) in the context of a collective action brought pursuant to the Age Discrimination in Employment Act ("ADEA"). The ADEA incorporates by reference the remedies and enforcement provisions of FLSA §216(b), and its analysis applies with equal force to FLSA cases." *Hoffman v. Sbarro, Inc.*, 982 F. Supp at 261 n. 15 (S.D.N.Y. 1997).

among plaintiffs, even if such questions do not predominate.  There is no requirement that the class claims be based upon the same transactions or occurrence, as long as there is a logical connection between them.  *See Stone v. Fist Union Group*, 203 F.R.D. 532 at 540-41 (S.D. Fla. 2001).  "Strict symmetry between filing Plaintiff's charges and the claims of the opt-in Plaintiffs is not the standard; 'sufficiently similar' is the standard.  Under this standard, nothing more is required 'than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by [illegality].'"  *Hipp v. Liberty Nat'l Life Ins. Co.*, 973 F. Supp. 1033, 1039 (M.D. Fla. 1997), aff'd in part and rev'd on other grounds, 252 F3d 1208 (11th Cir. 2001).  Allegations of a single decision, policy, or plan are just one way to satisfy the similarly situated standard – not the only way.  *Hipp*, *supra*, 252 F.3d at 1219.

A representative plaintiff has the right to notify the people he would like to represent, and the Court may in its discretion order discovery of and notice to, similarly situated employees.  *O'Brien v. Morse*, 2002 U.S. Dist. Lexis 10495 (N.D. Ill. 2002)(citing *Sperling*, 493 U.S. at 167).  "The benefits of the class action provisions of §216(b) 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they may make informed decisions about whether to participate."  *Shaffer v. Farm Fresh, Inc.*, 966 F. 2d 142, 147 (4th Cir. 1992)(*quoting Sperling*, 493 U.S. at 170).  *See also generally Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687 (M.D. Fla 1994).  Indeed:

> [S]ome form of court involvement is "inevitable,"…[E]arly participation by the district court in the notice process serves a number of important goals.  Judicial oversight of the contents of the notice protects against misleading communications and misuse of the class devise, and enables the court to resolve disputes about the contents of the notice before it is sent out.  District court involvement also ensures that all potential plaintiffs receive timely notice of a pending suit, and thus prevents the proliferation of multiple individual suits arising from the same allegedly [wrongful] conduct.  Also by setting a cut-off date for the receipt of consents, the court can expedite resolution of the action…

*Garner v. G.D. Searle Pharmaceuticals & Co.*, 802 F. Supp. 418, 422 (M.D. Ala. 1993)(*citing Sperling*, 493 U.S. 170-72).

Notice to potential plaintiffs also serves other important purposes, including alerting persons who would otherwise be unaware of their rights, that those rights might be violated, saving those persons' claims from being barred by the applicable statute of limitations, permitting employees to pool their resources and thus, "leveling the playing field" between potential plaintiffs with small claims and large corporations with extensive resources, and locating other employees who may be able to confirm the existence of the alleged wrongdoing. *Sperling*, 493 U.S. at 170; *Neizel v. Williams*, 1983 U.S. Dist. LEXIS 20085, *4-*5 (M.D. Fla. 1983)(quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 n. 18 (1945)). *See also Brzychnalski v. Unesco*, Inc., 35 F. Supp. 2d 351 (S.D.N.Y. 1999)(granting motion for employer to furnish employees' identities "on an expedited basis," and ordering that such employees' names and addresses be furnished within 20 days).

Court-facilitated notice "allows persons less likely to be aware of the suit, or to sue themselves, to receive notice and decide whether to opt in at an early stage. *O'Brien v. Morse*, 2002 U.S. Dist. Lexis 10495 (N.D. Ill. 2002). "[O]ne of the policy reasons underlying early class notice is that 'the experiences of other employees may well be probative of the existence vel non' of an unlawful practice, 'thereby affecting the merits of the plaintiff's own claims.'" *Zhao v. Benihana, Inc.*, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. 2001)(*quoting Frank Capital Cities Communications, Inc.*, 88 F.R.D. 674, 676 (S.D.N.Y. 1981).

Also, "only by 'opting in' will the statute of limitations on potential plaintiffs' claims be tolled." *Hoffman v. Sbarro, Inc.*, 982 F. Supp 249, 260 (S.D.N.Y. 1997). *See also Bonilla v. Las*

11

*Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1136-37 (D. Nev. 1999). Thus, notice prevents potential plaintiffs who might not be aware of their rights from loosing those rights. *See* Hoffman, 982 F. Supp at 260 ("It is part of the reason—the running statute of limitations—that plaintiffs urge the Court to authorize the sending of notice and opt-in consent forms to potential plaintiffs 'whose claims continue to 'die daily.'").

> B. **THE FLSA'S LIBERAL STANDARD FOR CERTIFICATION OF COLLECTIVE ACTIONS IS APPLICABLE. THE MORE RESTRICTIVE RULE 23 STANDARD DOES NOT APPLY.**

When the FLSA was enacted in the 1930s, Rule 23 did not exist. Congress, however, believed it was important to create a mechanism by which employees could easily have their overtime pay or minimum wage claims adjudicated in one lawsuit. Therefore, Congress created a precursor of Rule 23 with the FLSA's collective action provision: §216(b). Under this provision, the employee must affirmatively opt into the action. Of course, the employee cannot opt in unless he or she knows about the collective action. Hence, Plaintiff files this Motion seeking authority to provide a form of Notice and Consent to putative class members.

In *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), the U.S. Supreme Court highlighted the importance of notice to potential class members under the FLSA. It adopted the Second Circuit's holding in *Braunstein v. Eastern Photographic Labs*, 600 F. 2d 335 (2d Cir. 1979): "We believe that Judge Daly took the proper course of action in authorizing notice to other potential plaintiffs in this action under the FLSA … [T]his holding comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interests of the courts in avoiding the multiplicity of suits." *Braunstein*, 600 F. 2d at 336.

Although a historical precursor to Rule 23, the FLSA's collective action provision is very different. Rule 23's requirements of commonality, typicality, numerosity, and representativeness

12

are not part of the standard for collective action certification under FLSA. "[T]he Rule 23 class standard is inapplicable with regard to whether a §216(b) collective action should be permitted, and [] the applicable standard is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Store v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D. Fla. 2001). *See also Grayson v. K Mart Corp.*, 79 F. 3d 1086, 1096 (11th Cir. 1996)(*citing Flavel v. Svedala Indus. Inc.*, 875 F. Supp. 550, 553 (E.D. Wis. 1994).(standard under §216(b) is "considerably less" demanding than Rule 23); *Alix v. Shoney's*, 3 WH Cases 2d 1532 (E.D. La. 1997)(the provisions of Rule 23 are inapplicable to any action brought pursuant to 29 U.S.C. §216 (b)); *Zelaya v. J.M. Macias, Inc.*, 175 F.R.D. 625 (E.D.N.C. 1997)(same*); Pirrone v. North Hotel Assocs.*, 108 F.R.D. 78, *3 (E.D. Pa. 1985)(the FLSA's own "class action" provision, rather than Rule 23, controls FLSA "class actions"). Unlike Rule 23 in which plaintiffs must "opt out" to avoid being bound by a judgment, under the §216(b) "opt in" scheme, "potential plaintiffs must affirmatively notify the court of their intention to be a party to the class action in order to be bound by and benefit from it." *Kane v. Gage Merchandising Servs., Inc.*, 138 F. Supp. 2d 212, 214 (D. Mass. 2001). *Accord Kaas v. Pratt & Whitney*, 1991 U.S. Dist. LEXIS 11177 (S.D. Fla. 1991)(*citing LaChapelle v. Owens-Illinois, Inc.*, 513 F. 2d 286, 288 (5th Cir. 1975).[2] Perhaps because of the great importance of expedited notice, given the FLSA's statute of limitations, only a minimal showing of potentially similarly situated persons is required. *Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351, 353 (S.D.N.Y. 1999).

      C.      **LIABILITY IS NOT AN ISSUE FOR PURPOSES OF PLAINTIFF'S MOTION TO CERTIFY.**

The Defendant may initially deny liability and assert affirmative defenses to plaintiff's

---

[2]/     The Eleventh Circuit adopts decisions of the former Fifth Circuit rendered prior to October 1981 as binding precedent. *Bonner v. City of Prichard*, 661 F2d 1206 (11th Cir, 1981).

suit. But liability is not relevant to a motion to conditionally certify a collective action under the FLSA – just as it is not with respect to Rule 23. The Supreme Court and the Eleventh Circuit have made clear that the underlying merits of class claims are not to be explored when deciding whether to certify a class. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Cox v. American Cast Iron Pipe Co.*, 784 F2d 1546, 1557 (11th Cir. 1986), *cert denied. See also Anderson v. City of Albuquerque*, 690 F. 2d 796, 799 (10th Cir. 1982) (district court erred in denial of class certification by inquiring into merits of case).

Notice is wise, even if the claims do not ultimately succeed:

*The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted…*[E]ven if the plaintiffs' claims turn out to be meritless, or in fact, all the plaintiff's turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable a more efficient resolution of the underlying issues in the case…. These benefits, however, depend on the employees receiving accurate and timely notice.

*Rehwaldt v. Elec. Data Sys. Corp.*, 1996 WL 947568, *3 (W.D.N.Y.)(emphasis in original).

Thus, although the merits of the Plaintiff's case are strong, in deciding whether or not to authorize notice to similarly situated persons, the Court should not examine the underlying merits of the action or defenses.

> **D. CERTIFICATION SHOULD BE GRANTED AND COURT APPROVED NOTICE AUTHORIZED FOR MAILING TO POTENTIAL PLAINTIFFS, UNDER THE APPLICABLE FIRST TIER (THE "NOTICE STAGE").**

In *Hipp, supra*, the Eleventh Circuit Court of Appeals recommended that district courts utilize a "two-tiered approach" to certification of collective actions under the FLSA, and observed that such an approach is "an effective tool for district courts to use in managing these often complex cases…" 252 F. 3d at 1219 (affirming both the trial court's initial certification of

the opt-in ADEA class and its refusal to decertify the class at trial).

The initial "tier," frequently referred to as "notice stage," occurs early in the litigation – when the court has "minimal evidence" before it. *See Id.* at p. 1218 (quoting *Mooney v. Aramco Srvcs. Co.*, 54 F3d 1207, 1213-14 (5th Cir. 1995)). At this stage, the named plaintiff's burden is "lenient." *See Id.* (*quoting Mooney*, 54 F. 3d at 1213-14). To certify a collective action under this first tier, the named plaintiff need only make a "modest factual showing," *see Zhao*, 2001 U.D. Dist. LEXIS 10678 at *9 (*quoting Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995), or in other words, "a colorable basis for a representative suit." *Mertz v. Treeetop Enterprises, Inc.*, 1999 U.S. Dist. LEXIS 18386, *7 (N.D. Ala. 1999). The first tier determination "typically results in 'conditional certification' of a representative class." *Id.*; *Mooney v. Arameco Servcs. Co.*, 54 F3d 1207, 1213-1215 (5th Cir. 1995)(determination "is made using a fairly lenient standard").

The phrase "similarly situated" is interpreted broadly to include all affected employees who may have an interest in the suit. In other words, "similarly situated" means similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined. The prospective class must raise similar legal issues concerning the non-payment of minimum wages. However, their situations need not be identical. *Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). Differences as to time actually worked, wages actually due, and hours involved are, of course, not significant to this determination.

Numerous courts have determined that as little as one additional similarly situated "opt-in" plaintiff is sufficient to warrant conditional class certification. *See, Montes de Oca v. Gus Machado Ford of Kendall, et al.,* No. 10-23610 –CIV-MORENO/TORRES, at *9-10 (S.D. Fla. April 18, 2011)(D.E. 45)*, citing, e.g., Wynder v. Applied Card Systems, Inc.,* No. 09-80004-CIV,

15

2009 WL 3255585, at *3 (S.D. Fla. Oct.7, 2009)(conditional certification granted based on affidavit of named plaintiff and one other putative class member); *Guerra v. Big Johnson Concert Pumping, Inc.,* No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (same); *Reyes v. Carnival Corp.,* No. 04-21861-CIV, 2005 WL 4891058, at *6 (S.D. Fla. May 25, 2005) (conditional certification granted based on affidavit of named plaintiff and two opt-in plaintiffs). In the case at hand, several former employees of the Defendant have communicated their desire to join by actually filing their consents to join and/or providing affidavits detailing the identical manner in which they were all denied their right to a minimum hourly wage.

> As the court observed in *Shain v. Armour & Co.*, 40 F. Supp. 488 (W.D. Ky. 1941):
>
> The evident purpose of the Act is to provide one lawsuit in which the claims of different employees, different in amount but all arising out of the same character of employment, can be presented and adjudicated, regardless of the fact that they are separate and independent of each other.

*Id.* at 490.

> Likewise, the Court observed in *Burns v. Guilpin*, 188 S.W. 2d 338 (Tenn. 1945):
>
> Similarly situated does not mean identically situated. Employees of a general class may be similarly situated in that they all claim to have been engaged in the production of goods in commerce and claim to be entitled to additional compensation, but the details of their employment may differ in certain respects.

*Id.* at 340-41.

Hence, individuals may also be "similarly situated" even though they had different job titles, different job duties, and worked different locations. In the case at bar, all of the members of the Proposed Class are employees who worked as automobile salespersons compensated pursuant to a so-called "commissions-only pay plan" which is virtually, identically described by them. All putative members of the class were likewise under the same supervisory ambit of Mr. Rod Rifai who operates both dealerships in similar fashion.

16

"To impose a strict standard of proof on the plaintiffs at this early stage could unnecessarily hinder the development of collective actions and would undermine the 'broad remedial goals' of the …FLSA." *Garner*, 802 F. Supp. at 422 (*citing Sperling*, 493 U.S. at 173). Also, "the fact that subsequent discovery may prove that the original plaintiffs and the opt-in plaintiffs are not, after all, 'similarly situated' does not work against the original decision to facilitate notice." *Harrison v. Enterprise Rent-A-Car Co.*, 1998 U.S. Dist. LEXIS 13131, * 13-*14 (M.D. Fla. 1998).

> Nor must this Court wait for defendant to complete its discovery before authorizing class notice. To the contrary… courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient class management. *See Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y 1985)(Certainly, it is 'unlikely that Congress, having created a procedure for the representative action, would have wanted to prevent the class representatives from notifying other members of the class that they had a champion."),…

*Realite v. Ark Restaurants Corp..,* 7 F. Supp. 2d 303, 306 (S.D.N.Y.). *See also Hoffman*, 982 F. Supp at 260 (running statute of limitations is compelling reason for early notice); *Belcher v. Shoney's Inc.*, 927 F. Supp. 249, 252 (M.D. Tenn. 1996)("[T]he Court provisionally GRANTS the Plaintiff's request for expedited court-supervised notice to prospective class members."). One of the principal reasons that the standard is lenient under the first tier is that nothing prevents the court from modifying a decision on 'similar situations' at a later time, as new facts emerge." *Sperling v. Hoffman-Laroache, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)(ADEA case).

The second and subsequent determination regarding the "similarly situated" requirement – which is <u>not</u> currently at issue here – is normally precipitated by a defense motion to decertify "after discovery is largely complete and the matter is ready for trial." *Hipp*, 252 F. 3d at 1218 (*quoting Mooney*, 54 F.3d at 1213, 14). "This is sometimes referred to as a 'certification'

hearing. At the certification stage the district court must evaluate the claims of the putative plaintiffs, consider contradictory evidence, and make appropriate findings of fact as to whether any 'opt-in' plaintiff's are similarly situated." *Mertz*, 1999 U.S. Dist. LEXIS 18386 at *8. "If the claimants are similarly situated, the district court allows the representative action to proceed to trial." *Hipp*, 252 F.3d at 1218 (quoting *Mooney*, 54 F. 3d at 1213-14).

### E. NOTICE AND DISCOVERY SHOULD BE EXPEDITED AND THE LIMITATIONS PERIOD TOLLED.

#### 1. Equitable Tolling

As noted above, the limitations period applicable to other putative class members continues to run until they opt in to this action or file their own. Accordingly, Plaintiffs hope to obtain an order which expedites the notice and discovery processes relating to their notification. In the alternative, Plaintiffs request that the order granting this motion toll the limitations period such that it begins to run from the date this action was filed. The Eleventh Circuit has specifically stated: "Unless Congress states otherwise, equitable tolling should be read into every federal statute." *Ellis v. General Motors Acceptance Corp.*, 160 F. 3rd 703, 706 (11th Cir. 1998), *citing*, *Holmberg v. Armbrecht*, 327 U.S. 392, 394-96 (1942). *See also*, *Sperling v. Hoffman La-Roche*, 24 F. 3rd 463 (ed Cir. 1994)(affirmed order granting motion to toll applicable ADEA statute of limitations where the complaint was filed three months after the alleged discrimination where the court did not grant a motion for court authorized notice until almost three years after the alleged unlawful conduct).

#### 2. Expedited Discovery

For the reasons set forth in the "equitable tolling" section above, the data requested is of a time sensitive nature. It is also information of a type which is readily available to the Employer,

is not difficult to produce and is required to be produced pursuant to Rule 26(a), Fed R. Civ. P. even before discovery is requested and irrespective of class certification. Rule 26 expressly provides in pertinent part:

> **(a) Required Disclosures.**
> (1) Initial Disclosures.
> (A) *In General*. … a party must, without awaiting a discovery request, provide to the other parties:
> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

Rule 26(a), Fed R. Civ. P. Such information is clearly discoverable in this case and should be produced as expeditiously as possible. See *Disimone v. Atlantic Services, Inc.*, Case No. 09-804602-CIV-RYSKAMP, Docket Entry 27, (S.D. Fla. Dec. 29, 2009); *Donahay v. Palm Beach Tours & Transp., Inc.*, Case No 06-61270, 2007 WL 1119206, *1 (S.D. Fla. Apr. 16, 2007).

   **F.    SWORN AFFIDAVITS BY THE NAMED PLAINTIFF AND OPT-IN PLAINTIFFS PROVIDE AMPLE JUSTIFICATION FOR GRANTING THIS MOTION.**

The named Plaintiff and all other "opt in" Plaintiffs have filed respective Affidavits (briefly summarized supra at pp. 3-6). See also the respective Affidavits filed at D.E. 20, 21, 23, 24, 30. Therein Plaintiffs clearly aver a basis for conditional certification at this early stage. It is apparent that policies and practices of the employer have adversely affected many present and former sales employees. Plaintiffs have exceeded the modest factual showing needed for conditional certification.

### III. CONCLUSION

WHEREFORE, this Honorable Court should grant Plaintiff's motion to conditionally certify the above-styled action as a collective action and grant such further relief as set forth and requested on pages 1 and 2.

Respectfully submitted,

/s/Anthony F. Sanchez
Anthony F. Sanchez
Florida Bar No. 0789925

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 2, 2011, I electronically filed the foregoing with the Clerk of Court using CM/ECF.  I also certify that the forgoing is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner, including: David Buchsbaum, Esq., Fisher & Phillips, LLP, 450 East Las Olas Boulevard, Suite 800, Ft. Lauderdale, FL 33301.

Anthony F. Sanchez, P.A.
Counsel for Plaintiffs
6701 Sunset Drive, Suite 101
Miami, FL 33143
Tel.:   305-665-9211
Fax:   305-328-4842
E-mail: afs@laborlawfla.com

/s/Anthony F. Sanchez
Anthony F. Sanchez
Florida Bar No. 0789925