UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-22517-CIV-TORRES

CONSENT CASE

RAIKO DIAZ; and
others similarly situated,

  Plaintiff,

v.

SOUTHERN AUTOMOTIVE GROUP, INC.,
d/b/a "Kendall Kia"; SOUTHERN
AUTOMOTIVE DEALER GROUP, CORP.
d/b/a "Homestead Chevrolet Cadillac
and ROD R. RIFAI, individually,

  Defendants.
_____/

**ORDER ON PLAINTIFF'S MOTION
FOR CONDITIONAL CERTIFICATION**

  This matter is before the Court on Plaintiff's Motion and incorporated Memorandum for Conditional Certification of Collective Action under the FLSA, Production by Defendants of a Comprehensive List of Present and Former Employees, and Court Authorized Mailing of Opt-in Notices ("Motion"). [D.E. 31]. This Court has reviewed the Motion, response [D.E. 41], reply [D.E. 44], supplemental authorities, as well as the record in this case. For the following reasons, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.  *BACKGROUND*

Plaintiff Raiko Diaz ("Plaintiff") filed a complaint against Defendants Southern Automotive Group, Inc., Southern Automotive Dealer Corp., and Rod Rifai (collectively "Defendants")  alleging violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201-219 *et seq*. More specifically, Plaintiff alleges that Defendants failed to pay Plaintiff and similarly situated employees the requisite minimum wage while employed by the Defendants. [D.E. 1]. Plaintiff worked as an automobile salesperson at Defendants' automobile dealership operating under the fictitious name "Kendall Kia" located in the Kendall area of Miami-Dade County, Florida. [D.E. 31].

According to the complaint, Plaintiff and similarly situated salespersons were paid under a "commissions-only" pay plan, which did not guarantee the payment of the statutorily mandated minimum wage. [D.E. 1 at 3].  Plaintiff alleges that Defendants paid him, and similarly situated salespersons, a minimum "salary" of $600.00 or $800.00 per week for hours worked, regardless of the number of hours actually worked. [D.E. 31 at 4].  However, when this gross "salary" exceeded the total commissions earned by Plaintiff, or a similarly situated salesperson, during a monthly period, this "shortage" would be carried over to following months and would represent a deficit that the salesperson owed back to Defendants. [D.E. 31 at 5].  The Defendants would then collect this "debt" by taking a credit against the salesperson's earnings for the following pay periods. [D.E. 31 at 5]. In such a situation, the salesperson was considered in debt to the employer until the salesperson resolved this deficiency. As a result, the number of hours a salesperson worked was irrelevant; a salesperson earned, at most, the "net

commissions exceeding the gross weekly salary." [D.E. 31 at 4]. Indeed, Plaintiff asserts that he, as well as other similarly situated salespersons, were "typically scheduled to work between six and seven days per week and actually worked at least 10 to 12 hours per day" without receiving the requisite minimum wage. [D.E. 31 at 5]. Thus, as a result of this pay scheme, Plaintiff asserts that Defendants violated the FLSA.

To date, Plaintiff has been joined by five additional salespersons who worked at either the "Kendall Kia" or "Homestead Chevrolet Cadillac" dealership and who also seek their unpaid minimum wages. [D.E. 31 at 3]. Altogether, those consenting to join attest to undertaking similar duties and receiving compensation under effectively the same pay plan, despite the number of hours worked by each individual. *See* [D.E. 20-1, D.E. 21-1, D.E. 23-2].

Based on this showing, Plaintiff seeks preliminary court approval of and notice to current and former employees of Defendants who worked as automobile salespersons at any of the privately held automobile dealerships operated under the auspices of the fictitious names "Kendall Kia" and "Homestead Chevrolet Cadillac" from July 13, 2008 through the present. [D.E. 31 at 1-2]. Specifically, Plaintiff seeks court approval to send notices to salespersons from Defendants' "Kendall Kia" and "Homestead Chevrolet Cadillac" dealerships. Additionally, Plaintiff requests: 1) expedited discovery from Defendants to provide a contact list of the past and present salespersons for these dealerships; 2) permission to mail a Court-Approved Notice to all such persons listed as salespersons for these dealerships; and 3) equitable tolling of the limitations period

so that the statute of limitations begins to run on July 13, 2011.

In response, Defendants contend that Plaintiff, as a threshold matter, lacks the requisite standing to represent this FLSA class because he is a former Kendall Kia dealership employee who never worked at the Homestead Chevrolet Cadillac dealership. Moreover, turning to conditional certification, Defendants argue that Plaintiff fails to establish the existence of similarly situated automobile salespersons who desire to opt-in to this litigation and, therefore, we should deny Plaintiff's Motion. Defendants also argue that there are factual dissimilarities among the plaintiffs that make a collective action inappropriate due to individualized defenses that the Defendants can raise with regard to each Plaintiff.

## II.  ANALYSIS

### A.  *Conditional Certification Standard*

A district court has the authority to permit a Notice of Pendency of Action to be sent to similarly situated potential opt-in class members. *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989); *Hipp v. Liberty Nat'l Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001). However, before a court conditionally certifies the action as a collective action and permits notice to be sent, it must satisfy itself that there are other similarly situated employees of the employer who desire to opt-in. *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).

In *Hipp*, the Eleventh Circuit laid out a two-stage procedure to determine whether it is appropriate to maintain an action under 29 U.S.C. § 216(b) as a collective action. *See* 252 F.3d at 1216-19. In the first stage, the court should evaluate the case

under a fairly lenient standard, based upon the pleadings and affidavits. *Id.* at 1218. Once the action is conditionally certified, notice is provided to putative class members, and discovery proceeds.  Once discovery is completed, at the second stage of the proceedings, the defendant may file a motion to decertify the class, if appropriate to do so based upon the individualized nature of plaintiff's claims. *Id.*

At both stages, a plaintiff is required to demonstrate some reasonable basis for its claim of class-wide discrimination, and that there are similarly situated class members who desire to join the lawsuit.  The difference lies primarily in the scrutiny that will be given to these stages.  At the second stage, the court will have much more information on which to base a determination of whether a claimant is similarly situated, and a plaintiff will be required to submit "detailed allegations supported by affidavits which successfully engage defendant['s] affidavits to the contrary." *Id.* at 1219.

The requirement that members of the collective action under 29 U.S.C. § 216(b) be "similarly situated" is a flexible one, and is different from that required under Fed. R. Civ. P. 20 (joinder), 23 (class actions), and 42 (severance).  *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1095-96 (11th Cir. 1996).  *Grayson* explained that "it is clear that the requirements for pursuing a §216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of Civil Procedure. *See e.g., LaChapelle v. Owens Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975) (Rule 23 and § 216(b) actions are 'mutually exclusive and irreconcilable')." *Id.* at 1096 n.12.

Also, the term employer is defined broadly by the FSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d) (2006). Included in the FLSA definition of employer is "a corporate officer with operational control of a corporation's covered enterprise." *Patel v. Wargo*, 803 F.2d 632, 637-38 (11th Cir. 1986).

The factors to consider in determining whether the putative opt-in plaintiffs are similarly situated include: 1) whether the plaintiffs all held the same job title; 2) whether they worked in the same geographical location; 3) whether the alleged violations occurred during the same time period; 4) whether the plaintiffs were subjected to the same policies and practices, and whether these policies and practices were established in the same manner and by the same decision-maker; 5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar. *See Stone v. First Union Corp.*, 203 F.R.D. 532, 541-43 (S.D. Fla. 2001) (collecting cases which discuss the various factors used to determine the "similarly situated" requirement).

In addition to determining that other similarly situated employees exist, the court must also determine whether Plaintiff puts forth sufficient evidence that such employees desire to become a part of the lawsuit. *Dybach*, 942 F.2d at 1567-68 ("Before determining to exercise such power [to authorize notice] ... the district court should satisfy itself that there are other employees of the [ ]employer who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions.").

Ultimately, we must determine whether, based upon the particular facts of the case, the similarities among the putative class members are sufficient so that it is more practical, efficient and fair to proceed as a collective action rather than requiring separate actions. Consideration must also be given to the extent that members of the proposed class will rely on common evidence to prove their claim and the individual defenses that an employer may assert against each plaintiff.

### B.     *<u>Plaintiff has Standing to Represent the Class</u>*

Defendants contend Plaintiff lacks standing to represent potential class members who work or have worked at the Homestead Chevrolet Cadillac dealership because Plaintiff worked at the Kendall Kia dealership only. We find Defendants' argument unavailing and conclude that Plaintiff has standing to represent a broad class encompassing present and former automobile salespersons from the Kendall Kia and Homestead Chevrolet Cadillac dealerships.

Because we are at the first stage of the Eleventh Circuit's two-stage procedure to determine whether it is appropriate to maintain an FLSA case as a collective action, this court must evaluate the case under a lenient standard, based on the pleadings and affidavits. Plaintiff contends that Southern Automotive Group, Inc. d/b/a "Kendall Kia" operates the Kendall dealership. [D.E. 31 at 4]. And, the owner of the registered fictitious name "Kendall Kia" is Rod Rifai, who also owns and controls Southern Automotive Dealer Group, Corp. d/b/a "Homestead Chevrolet Cadillac" in Miami-Dade County, Florida. [D.E. 1 at ¶3]. Plaintiff alleges that the "Kendall Kia" and "Homestead Chevrolet Cadillac" are two related entities, and that they are closely and

privately, owned and operated, individually, by Rod Rifai. [D.E. 31 at 4]. Furthermore, Plaintiff alleges that "these related corporate Defendants have the same registered agent and President, Rod Rifai." [D.E. 1 at ¶4].

Moreover, Plaintiff contends that prior to starting work at the Kendall Kia dealership, he was required to complete training at the Homestead Chevrolet Cadillac dealership. Thus, Plaintiff argues that Defendants, and these various entities, represent a conglomerate of common ownership and common operation, and consequently, company-wide notice is permissible.

Defendants contend, however, that Plaintiff lacks standing to bring suit against the Homestead Chevrolet Cadillac dealership because he only worked for the Kendall Kia dealership. [D.E. 41 at 5]. Yet, contrary to their position, Defendants acknowledge that Plaintiff has alleged that "he was required to participate in a training session at Homestead Chevrolet Cadillac and that he worked for several days at Homestead Chevrolet Cadillac before being assigned to work at Kendall Kia." [D.E. 41 at 7].

Moreover, while Defendants assert that the sales departments at each dealership are separately staffed and managed, they fail to rebut the submitted affidavits attesting that the two dealerships are owned and operated by Mr. Rifai. Because of the lenient requirement for the Plaintiff in the first stage of conditional class certification , combined with an FLSA definition of employer as a corporate officer with operational control, we find that Plaintiff's have standing certify a class of plaintiffs that worked at both the Kendall Kia and Homestead Chevrolet Cadillac dealerships.

Furthermore, the FLSA permits an action to be brought for unpaid minimum wages "by any one or more employees *for and in behalf of himself* or themselves *and other employees similarly situated.*" 29 U.S.C. § 216(b). This statute means that plaintiffs have standing to sue for others who are similarly situated. In the initial stage, plaintiffs do not need to prove that other employees are in fact similarly situated; instead, plaintiffs need only to demonstrate a "reasonable basis" to believe that similarly situated individuals exist in the proposed class. Here, multiple former employees have given affidavits stating that individuals at Homestead Chevrolet Cadillac were treated in the same manner as the Plaintiff working at Kendall Kia. *See* [D.E. 1, D.E. 20-1, D.E. 21-1, D.E. 23-2].

Notwithstanding Defendants' argument, and upon a review of the Plaintiff's allegations, we find that the Homestead and Kendall dealerships – based on the present record – share common management, share some common ownership, operate under similar corporate names, share a common commission pay plan, and are otherwise sufficient to conditionally certify an FLSA class. *See Lopez, et al., v. The Valls Group, Inc.*, No. 08-20370-CIV-GOLD/McALILEY, at *10-14 (S.D. Fla. July 15, 2008) (D.E. 37) (court determined that company-wide notice to all nine La Carreta restaurants was appropriate because the restaurants were operated by, in effect, a single employer running a family owned conglomerate of related restaurants operating under the same or similar names and owned and operated by related corporate members). Thus, as the case before us is similar to *Lopez*, we find Plaintiff has standing.

### C. *Conditional Certification is Warranted*

With standing resolved in Plaintiff's favor, we turn to whether Plaintiff establishes that there are employees who: 1) desire to opt-in; and, 2) are similarly situated to Plaintiff. *See Dybach*, 942 F.2d at 1567-68. The first requirement of conditional class certification is satisfaction that there are other employees who "desire to opt-in." *Id.* The record before us clearly shows that, in addition to the Plaintiff, five of Defendants' current or former automobile salespersons filed "Consent to Join" notices in this matter. [D.E. 7, 19, 20, 21, 23, 24-3, 30].

Thus, this showing alone demonstrates that Plaintiff satisfies this first requirement. *See Clincy v. Galardi South Enterprises, Inc.*, No. 1:09-CV-2082-RWS, 2010 WL 966639, at *2-3 (N.D. Ga. Mar. 12, 2010) (court determined that twenty-four opt-in plaintiffs satisfied this prong of the conditional certification analysis); *Sala v. St. Petersburg Kennel Club, Inc.*, No. 8:09-cv-1304-T-17-TBM, 2010 WL 746703, at *2 (M.D. Fla. Mar. 2, 2010) (same). In fact, courts have determined that as little as one additional "opt-in" plaintiff is sufficient. *See, e.g., Wynder v. Applied Card Systems, Inc.,* No. 09-80004-CIV, 2009 WL 3255585, at *3 (S.D. Fla. Oct.7, 2009) (conditional certification granted based on affidavit of named plaintiff and one other putative class member); *Guerra v. Big Johnson Concert Pumping, Inc.,* No. 05-14237-CIV, 2006 WL 2290512, at *4 (S.D. Fla. May 17, 2006) (same); *Reyes v. Carnival Corp.,* No. 04-21861-CIV, 2005 WL 4891058, at *6 (S.D. Fla. May 25, 2005) (conditional certification granted based on affidavit of named plaintiff and two opt-in plaintiffs). Accordingly, we find that five opt-in plaintiffs are sufficient to demonstrate that others desire to join

in this action.

The second requirement of conditional class certification is that there are other employees who are similarly situated to the named Plaintiff. *Dybach*, 942 F.2d at 1567-68. The Plaintiff bears the burden of showing a *reasonable basis* for the claim that there are other similarly situated employees and must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1261 (11th Cir. 2008) (internal citations omitted). At a minimum, Plaintiff must show that these employees are similarly situated "with respect to their job requirements and with regard to their pay provisions." *Dybach*, 942 F.2d at 1568. The emphasis is on *similar,* and thus, the positions held by the putative class members need not be *identical. See Hipp*, 79 F.3d at 1218. Here, three of the five of the opt-in plaintiffs submitted affidavits that mirror the Plaintiff's affidavit in all material ways. *See* [D.E. 20-1, 21-1, 23-2]. Again, the record before us – consisting of the complaint, three sworn affidavits and five notices of consent to join by former or current employees of Defendants – clearly establishes a reasonable basis for the claim that there are other employees who are similarly situated to Plaintiff with respect to, at a minimum, their job requirements and pay provisions. Indeed, without needlessly delving into their details, a review of the affidavits makes apparent that each salesperson performed similar duties and was paid under similar pay provisions as Plaintiff. Thus, Plaintiff has satisfied his burden of establishing all of the factors delineated in *Stone*, 203 F.R.D. at 541-43, to support a finding of "similarly situated" employees.

In further support for our conclusion, case law makes clear that these affidavits, in and of themselves, are sufficient to establish the "similarly situated" prong. *See Guerra,* 2006 WL 2290512, at *4 (finding a single affidavit, in addition to the named plaintiff, was sufficient to establish "a minimum quantum of evidence to warrant the creation of a collective [action]."); *see also Posada v. Page Brothers Assoc., Inc.*, No. 09-60895-CIV-MORENO, at *3-4 (S.D. Fla. Feb. 11, 2010) (D.E. 72) (court held numerous affidavits containing sufficiently detailed and similar allegations demonstrate finding a reasonable basis for conditional class certification); *Harper v. Lovett's Buffet Inc.*, 185 F.R.D. 358, 362-64 (M.D. Ala. 1999) (court conditionally certified a class of all hourly employees at the defendant's restaurant where plaintiff provided some fifteen affidavits stating that the amount the servers were paid, that they were required to do additional jobs for which they received no additional compensation, that these servers received W-2s and check stubs falsely stating tips not received, and that management would clock out employees without their knowledge); *compare with Parrilla v. Allcom Const. & Installation Services, LLC*, No. 6:08-cv-1967-Orl-31GJK, 2009 WL 1456442, at *2 (M.D. Fla. May 22, 2009) (denying motion to conditionally certify a class where plaintiff fails to submit any affidavits from similarly situated employees).

Accordingly, at this early stage, we find conditional certification is appropriate and that Plaintiff has carried the "fairly lenient standard" applicable to this inquiry. And, of course, after discovery is complete, Defendants may move to decertify the class through the second stage of the *Hipp* test.

### *III.   CONCLUSION*

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that:

1. Plaintiff Raiko Diaz's Motion for Conditional Certification [D.E. 31] is **GRANTED**.

2. It is **FURTHER ORDERED** that the Plaintiff's request for expedited discovery is **GRANTED IN PART** as follows: Within fifteen days of this Order, the Defendants shall produce to the Plaintiff, a complete list of every salesperson who was (or is) employed as an automobile salesperson at either of the privately held automobile dealerships operated by Mr. Rod R. Rifai under the fictitious names "Kendall Kia" and "Homestead Chevrolet Cadillac" at any time between July 13, 2008 and the present. This list of salespersons shall include the known home address, telephone number, and email address of the employees.

3. However, the Court **DENIES** Plaintiff's request for Defendants' former and current employees' social security numbers, if known.

4. The Court further **DENIES** the Plaintiff's specific request to require Defendants to format and produce, in both hard copy and in an Excel spreadsheet, an alphabetical list from "A" to "Z" of former employees and their information.

5. Plaintiff's request to mail a Court-Approved Notice–designated "Exhibit 1" and "Exhibit 2" in Plaintiff's Motion for Conditional Certification–is **GRANTED**.

6. The Court **DENIES** Plaintiff's request for equitable tolling.  For an opt-in plaintiff in an FLSA claim, the statute of limitations period runs from the opt-in date. 29 U.S.C. § 256; *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983)

("[Section] 256 also requires class plaintiffs to opt in, and limitations runs from the opt-in date."); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086, 1105 (11th Cir. 1996) (disagreeing with the plaintiff's argument that the statute of limitations period is tolled for opt-in plaintiffs when the complaint is filed). Because Section 256 requires the statute of limitations to run from the opt-in date, we must not alter the express terms of the statute. Despite this express language, a plaintiff may still prove that equitable tolling is appropriate upon establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Plaintiff fails to adduce any evidence of "extraordinary circumstances that are both beyond [Plaintiff's] control and avoidable even with diligence," *Sandvik v. U.S.*, 177 F.3d 1269, 1271 (11th Cir. 1999) (citations omitted), to warrant the tolling of the statute of limitations.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of April, 2012.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge